UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALAN L. SANTOS AND CAROL SANTOS,<br><br>  Plaintiff,<br><br>v.<br><br>GMAC MORTGAGE, LLC<br><br>  Defendant. | CIVIL ACTION NO. 1:16-cv-501 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GMAC MORTGAGE, LLC'S RENEWED MOTION TO DISMISS AMENDED COMPLAINT AS TO PLAINTIFF CAROL SANTOS ONLY**

### I. INTRODUCTION

On January 17, 2017, this Court granted GMAC Mortgage, LLC's ("GMAC") Motion to Dismiss (Doc. No. 11) as to Plaintiff Alan Santos, as unopposed, and denied the Motion to Dismiss as to Plaintiff Carol Santos due to the filing of a Suggestion of Bankruptcy. The United States Bankruptcy Court for the District of Rhode Island dismissed Carol Santos' Bankruptcy on February 13, 2017 and GMAC now seeks dismissal of the complaint as to Carol Santos.

Alan Santos and Carol Santos (collectively, "Plaintiffs") filed an Amended Complaint seeking rescission of the foreclosure sale of the property located at 70 Hall Street, Providence, Rhode Island (the "Property") and an order quieting title in their favor. Their claims rely solely upon errant and misconceived allegations that Government National Mortgage Association ("Ginnie Mae") is their lender. In fact, Ginnie Mae is nothing more than guarantor of Plaintiffs' mortgage loan, a fact which Plaintiffs allege and which federal law dictates, without dispute. Moreover, Plaintiffs' challenge to the notice of foreclosure sale ignores Rhode Island law, which authorizes loan servicers to issue the requisite pre-foreclosure notices and which empowers both a mortgagee and its assigns to invoke the statutory power of sale. The allegations in Plaintiffs'

34732285v1 0990737

Amended Complaint fail to establish that they are entitled to relief from foreclosure and an order quieting title in their favor. Accordingly, this Court should dismiss Plaintiffs' Amended Complaint pursuant to Fed R. Civ. P. 12(b)(6).

In further support of its Motion to Dismiss, GMAC submits the following:

## II. STATEMENT OF ALLEGATIONS[1]

Plaintiffs acquired the Property as tenants by the entirety on July 9, 2007 pursuant to a quitclaim deed recorded in the Land Evidence Records for the City of Providence at Book 8765, Page 106 on July 12, 2007 (the "TBE Deed"). (Am. Compl. ¶ 15; TBE Deed, *Exhibit A*.) Plaintiffs subsequently transferred the Property to Plaintiffs and Wendy Skaggs ("Skaggs", together with Plaintiffs shall be collectively referred to as the "Borrowers") on January 3, 2008, pursuant to quitclaim deed recorded in the Land Evidence Records for the City of Providence at Book 9140, Page 128 on June 26, 2008 (the "Skaggs Deed"). (Skaggs Deed, *Exhibit B*.)

On October 16, 2008, Borrowers executed a promissory note payable to Lend America[2] in the amount of $283,362.00 (the "Note"). (Am. Compl. ¶ 16; Note, *Exhibit C*.) The Note was subsequently endorsed in favor of and transferred to GMAC, which in turn endorsed the Note in blank. (Note, *Exhibit* C, p. 3.) Repayment of the Note was secured by a mortgage on the Property, which Borrowers executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") in its capacity as nominee for Lend America and which was recorded in the Land Evidence Records for the City of Providence at Book 9361, Page 216 on March 12, 2009 (the "Mortgage"). (Am. Compl. ¶ 16*; * Mortgage, *Exhibit D*.) The Mortgage was designated as an "FHA" mortgage and identified as "FHA Case No. 451-0973071-703". (Am. Compl. ¶ 17;

---

[1] GMAC admits the truth of these allegations solely for the purposes of this Motion to Dismiss but will contravene the allegations in the event GMAC is required to answer this case.
[2] As of the date of the Borrowers' Note and Mortgage, Lend America was a Ginnie Mae approved Issuer or Lender, and continued as such until November 30, 2009.

Mortgage, *Exhibit D*.) On August 24, 2009, MERS transferred the Mortgage to GMAC pursuant to an assignment recorded in the Land Evidence Records for the City of Providence at Book 9517, Page 155 on September 3, 2009 (the "Assignment"). (Am. Compl. ¶ 19; Assignment, *Exhibit E*.) The Plaintiffs allege that at some undisclosed time their mortgage loan was "pooled, sold, and otherwise transferred to Ginnie Mae, who is in fact the Lender and holder of the [N]ote given by Plaintiffs…" and that GMAC was merely the "mortgage servicer". (Am. Compl. ¶¶ 2, 18.)

After Borrowers defaulted under the terms of the Note and Mortgage, GMAC retained Orlans Moran, PLLC ("Orlans") to conduct a foreclosure sale of the Property. (Am. Compl. ¶ 20.) On May 10, 2011, GMAC mailed Borrowers notice that the Property would be sold at foreclosure auction on July 5, 2011. (*Id*.) GMAC also published notice of the foreclosure sale in the Providence Journal for three consecutive weeks beginning June 10, 2011. (*Id*.) GMAC conducted the foreclosure sale as scheduled on July 5, 2011 and purchased the Property as the highest bidder at auction. (*Id*. at ¶ 21.) GMAC executed and recorded a foreclosure deed in the Land Evidence Records for the City of Providence at Book 10173, Page 9 on January 13, 2012 (the "Foreclosure Deed"). (*Id*. at ¶¶ 13, 18, 26; Foreclosure Deed, *Exhibit F*.)

Plaintiffs claim that the July 5, 2011 foreclosure sale was invalid based upon allegations that GMAC did not have a recorded power of attorney from Ginnie Mae authorizing GMAC to conduct the foreclosure sale. (Am. Compl. ¶¶ 1, 22, 29.) Plaintiffs further claim that the foreclosure sale is invalid because GMAC, and not Ginnie Mae, issued the notice of sale mailed to Plaintiffs and published in the Providence Journal. (Am. Compl. ¶¶ 2, 23, 38.) Based upon the foregoing allegations and claims, Plaintiffs seek a declaration that the July 5, 2011 foreclosure

3

sale was invalid and void, rescission of the Foreclosure Deed, and judgment quieting title in their favor. (Am. Compl. ¶¶ 32-33, 40-41, 50.)

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The First Circuit Court of Appeals has explained that "a primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014). Moreover, the court is not bound to follow "'bald assertions, unsupportable conclusions, and opprobrious epithets' woven into the fabric of the complaint. [The court] can affirm the allowance of a motion to dismiss only if the plaintiff's factual averments hold out no hope of recovery on any theory adumbrated in its complaint." *In re Colonial*, 324 F.3d at 15 (internal citations omitted) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it is well-established that a court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *see also Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) (discussing court may look to matters of public record in deciding Rule 12(b)(6) motion).

## IV. LEGAL ARGUMENT

The entirety of Plaintiffs' Amended Complaint relies upon Plaintiffs' mistaken belief that Ginnie Mae, and not the mortgagee of record, GMAC, is the owner of their Note and Mortgage. The allegations in the Amended Complaint, the Ginnie Mae Mortgage-Backed Securities Program Guidelines, and federal law demonstrate that Ginnie Mae neither buys loans nor issues bonds, but instead is a government-owned corporation that guarantees bonds backed by pools of mortgages issued by mortgage lenders approved by Ginnie Mae. (Guidelines, *Exhibit G* at p. 1-1.) Plaintiffs have no claim for violations of R.I. Gen. Laws § 34-11-34, breach of contract and to quiet title based upon a misunderstanding of the role Ginnie Mae plays.

    A.    <u>Ginnie Mae is a Corporate Instrumentality of the United States authorized to Guarantee the Timely Payment of Principal and Interest on Mortgage-Backed Securities</u>

Plaintiffs misunderstand Ginnie Mae's role in the secondary market for residential mortgages to claim that GMAC improperly foreclosed on the Property.[3] Federal law confirms Ginnie Mae's limited role, if any, as guarantor in this matter:

> [Ginnie Mae] is authorized, upon such terms and conditions as it may deem appropriate, to guarantee the timely payment of principal of and interest on such trust certificates or other securities…backed by a trust or pool composed of mortgages.[4]

12 U.S.C. §1721(g)(1); *see also First Nat. Bank of Chicago v. Jefferson Mortgage Co.*, 576 F.2d 479, 482 (3d Cir. 1978). In short, "[t]he general business model of [Ginnie Mae] is not to buy

---

[3] "Unlike Fannie Mae and Freddie Mac, Ginnie Mae does not originate or purchase mortgage loans; rather, it *guarantees* securities backed by mortgages issued by certain federal agencies, such as the Federal Housing Administration (FHA) and others." Thomas P. Lemke, et al., MORTGAGE-BACKED SECURITIES § 2:4 (last updated November 2016)(emphasis in original).

[4] 12 U.S.C. §1721(g)(1) also provides for the mortgages which form the trust to become the absolute property of Ginnie Mae, however, only upon an event of default by the issuer/lender in its obligation to make payments of principal and interest to the investors of the trust, not when a single borrower defaults on mortgage obligations. Here, there is no allegation that the issuer defaulted on its obligation to the investors of the trust which contained Plaintiff's mortgage loan.

34732285v1 0990737

34732285v1 0990737

loans, but to guarantee securities issued by private lending institutions that are secured by pooled mortgage loans." *Iron Hawk v. Bank2*, No. 3:15–cv–1374–PK, 2016 WL 3391252, at *3 (D.Or. June 13, 2016); *see also Hoffman v. Phelan Hallinan, LLP*, No. 13-cv-5700, 2016 WL 4089163, at *4 (E.D. Penn. Aug. 12, 2016) ("Ginnie Mae guarantees the performance of the issuer rather than the underlying collateral, so it neither buys loans nor issues its own securities."). The creation of a Ginnie Mae Mortgage-Backed Security begins when a private lender, referred to by Ginnie Mae as an "issuer," originates and pools federally insured mortgage loans. *See Hoffman*, 2016 WL 4089163, at *4. The relevant mortgage loan documents are transferred to "a third-party document custodian," and Ginnie Mae approves the issuance of bonds backed by the pool of mortgage loans, which are then sold to investors. *Id.* (citing *First Nat. Bank of Chicago v. Jefferson Mortgage Co.*, 576 F.2d 479, 482 (3d Cir. 1978)); *see also Iron Hawk*, 2016 WL 3391252, at *3.

By approving a mortgage-backed security, Ginnie Mae provides a guarantee that the investors will receive timely payments on principal and interest in the event that the issuer fails to make such payment to the investors. 12 U.S.C. § 1721(g)(1); *see also* Mortgage-Backed Securities Program Guidelines (the "Guidelines"), *Exhibit G* at p. 1-1. In exchange for its backing and guarantee, which legitimizes the mortgage-backed security and provides safety for investors, Ginnie Mae receives a monthly fee and a conditional interest in the underlying mortgage loans from the issuer. *See Hoffman*, 2016 WL 4089163, at *4 (citing 12 U.S.C. § 1721(g)(1)). According to the standard guarantee agreement entered into between an issuer and Ginnie Mae, the issuer assigns the equitable interest in the mortgage loans to Ginnie Mae, while at the same time retaining legal title in the mortgage. *See Hoffman, 2016 WL 4089163, at *4* (citing *United States v. NBD Bank, N.A.*, 922 F. Supp. 1235, 1240 (E.D. Mich. 1996). The

equitable assignment of the mortgage loans to Ginnie Mae is conditional and may only be enforced if the issuer defaults on its obligation to holders of the mortgage-backed securities. *Id*. (internal citations and quotations omitted).

In this matter, Lend America, a former Ginnie Mae approved issuer, originated the Plaintiffs' FHA insured Note and Mortgage. (Note, *Exhibit C*; Mortgage, *Exhibit D*.) The allegations of Ginnie Mae's involvement would only establish that Plaintiffs' Mortgage loan was then bundled with other mortgage loans originated by Lend America and securitized as part of a mortgage-backed security with a Ginnie Mae guarantee. While Ginnie Mae may have served as guarantor according to Plaintiffs' allegations, at all times relevant GMAC was mortgagee, by assignment, and lender, as holder in due course of the Plaintiffs' Note. The face of the Note and the Assignment demonstrate that the relevant loan documents were transferred to GMAC. (Note, *Exhibit C*;[5] Assignment, *Exhibit E*.) Although Plaintiffs allege that their mortgage loan was "pooled, sold, and otherwise transferred to Ginnie Mae, who is in fact the Lender and holder of the [N]ote given by Plaintiffs...," this allegation is conclusory, speculative and lacks factual support. (Am. Compl. ¶ 18.) In fact, Plaintiffs contradict this very allegation by also alleging in in the Amended Complaint that Ginnie Mae guarantees mortgage-backed securities marketed by lenders. (*Id*. at ¶ 18.)

Moreover, the standard guaranty agreement provides Ginnie Mae with a conditional assignment of Plaintiffs' Mortgage, but Plaintiffs have not alleged that the issuer ever defaulted on its obligations to investors. As a result, there are no allegations to demonstrate that Ginnie Mae ever had the option to enforce its conditional interest in Plaintiffs' Mortgage. Accordingly,

---

[5] Plaintiffs' Note was thereafter endorsed in blank and transferred to a third-party document custodian. (Note, *Exhibit C*.) There is no factual allegation or document referred to in the Amended Complaint to demonstrate that the Note was ever endorsed to or held by Ginnie Mae.

7

GMAC was the owner and holder of the Plaintiffs' Note and the mortgagee of record at all relevant times. The only possible capacity Ginnie Mae could have served was guarantor.

> B.  **GMAC, as Assignee of the Mortgage and Mortgagee of Record, Properly Foreclosed on the Property.**

Plaintiffs seek to void the July 5, 2011 foreclosure sale of the Property and quiet title in their favor based upon allegations that GMAC did not have a recorded power of attorney from Ginnie Mae authorizing GMAC to foreclose and execute a foreclosure deed conveying the Property following the foreclosure sale pursuant to R.I. Gen. Laws § 34-11-34. (Am. Compl. ¶ 29.) Under Rhode Island law, any conveyance of land executed by an attorney requires a power of attorney signed, acknowledged, delivered and recorded. R.I. Gen. Laws § 34-11-34 (1956) Plaintiffs recite and rely upon the foregoing statute to challenge the foreclosure, but Plaintiffs have not alleged any facts to demonstrate that GMAC executed a conveyance of the Property on behalf of another entity, as attorney, such that a recorded power of attorney was required. Plaintiffs' convoluted argument ignores the fact that Rhode Island law empowers both a mortgagee and its assigns to invoke the statutory power of sale. *See Bucci v. Lehman Bros. Bank, F.S.B.*, 68 A.3d 1069, 1086, 1087-88 (R.I. 2013); *see also Mruk v. Mortgage Elec. Regis. Sys., Inc.*, 82 A.3d 527, 536 (R.I. 2013). Specifically, the Rhode Island power of sale statute permits a "mortgagee or his, her or its…successors or assigns" to sell the premises granted to it in a mortgage if "default shall be made in the [mortgage's] performance[.]"

Here, like the borrowers in *Bucci* and *Mruk*, Plaintiffs "grant[ed] and convey[ed] to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the statutory Condition and the Statutory Power of Sale," the Property. (Mortgage, *Exhibit D*, p. 1.) Record title to the Property

demonstrates that MERS assigned the Mortgage to GMAC in August 2009.[6] (Am. Compl. at ¶ 19; Assignment, *Exhibit E.*) After Borrowers defaulted on the terms of the Note and Mortgage, GMAC provided Borrowers with all requisite pre-foreclosure notices, conducted a foreclosure sale on July 5, 2011 and purchased the Property as the highest bidder at auction. (Am. Compl. ¶¶ 20-21.) GMAC's foreclosure on the Property without a recorded power of attorney or express authority from Ginnie Mae does not in any way impact the validity of the sale. Plaintiffs' claim that GMAC required some authority from government-backed guarantor Ginnie Mae to properly foreclose is simply not required under Rhode Island law or the terms of the Mortgage. Without any law, facts or evidence to dispute GMAC's authority, as assignee of the Mortgage, to invoke the statutory power of sale, GMAC is entitled to dismissal of the instant matter with prejudice.

      C.     <u>Plaintiffs Present No Plausible Challenge to Foreclosure under Rhode Island Law Based upon Allegations of Defective Notice</u>.

Plaintiffs also erroneously claim that GMAC's foreclosure sale was invalid because the "Lender," which Plaintiffs allege is Ginnie Mae, failed to mail or publish the notice of sale pursuant to the terms of the Mortgage. Again, Plaintiffs' claim relies entirely on their mistaken belief that Ginnie Mae is the "Lender," despite the fact that GMAC was the mortgagee of record and holder of the Note. However, even assuming that GMAC was merely the mortgage servicer, as Plaintiffs allege in the Amended Complaint, Plaintiffs attempt to invalidate the foreclosure sale based upon defective notice of sale fails as a matter of law. The Rhode Island federal court has concluded, on several occasions now, that "servicers, as agents of the lenders, can lawfully provide the borrower with the requisite foreclosure notices" in Rhode Island. *Cornejo v. Bank of*

---

[6] Although not required to foreclose under Rhode Island law, the face of the Note demonstrates endorsement to GMAC, such that it held both the Note and the Mortgage on the Property. *See Bucci* 68 A.3d at 1086-87 (R.I. 2013) (holding under Rhode Island law, possession of note is not required for mortgagee to initiate foreclosure under Rhode Island's Statutory Power of Sale)

*New York Melon*, No. 1:16-cv-00064-S-LDA, 2016 WL 4385895, at *1 (D.R.I. Aug. 17, 2016)(citing *Ingram v. Mortgage Elec. Registration Sys*., 94 A.3d 523, 529 (R.I. 2014)); *see also 252 Wolfrock Rd. Realty Redemption Co. v. Wells Fargo Bank N.A.*, No. 1:16-cv-00126-M-LDA, 2016 WL 3766297, at *1 (D.R.I. July 11, 2016); *Bowman v. Nationstar Mortgage, LLC*, No.16-cv-00490-M-LDA (D.R.I. Nov. 16, 2016).

In *252 Wolfrock Rd. Realty Redemption Co. v. Wells Fargo Bank N.A.*, 2016 WL 3766297 at *1, mortgage loan borrowers filed suit against their lender alleging that the lender illegally foreclosed based upon allegations that the notice of sale was issued by the loan servicer, not the lender. In seeking to invalidate the foreclosure sale, the borrowers argued that the notice provision of their mortgage required the lender to deliver the notice of sale. *Id*. This Court disagreed with the borrowers, and in reliance on Rhode Island Supreme Court decision in *Ingram*, determined that a "servicer, as a lender's agent, acquire[s] all the rights that the lender possesse[s], including the right to exercise the power of sale." *Id*. at *2. To that end, this Court found that the notice of sale issued by the lender's loan servicer satisfied the notice provision of the mortgage and held that "under Rhode Island law, an agent of a lender may initiate and complete foreclosure."

This Court's *252 Wolfrock* decision served as guidance in the later disposal of both *Cornejo* and *Bowman*: cases in which borrowers filed suit against their lenders to invalidate foreclosure sales because the notices of sale were sent by loan servicers instead of the lenders. *Cornejo*, 2016 WL 4385895 at*1; *Bowman,* No.16-cv-00490-M-LDA at p. 1. In *Cornejo*, Judge Smith rejected the borrower's argument and concluded that the lender "was well within its statutory power as noteholder" to appoint its servicer to deliver the notice of sale. 2016 WL 4385895 at*1. Ultimately, Judge Smith held that "servicers, as agents of the lenders, can lawfully

provide the borrower with the requisite foreclosure notices." *Id*. at *2 (internal citations and quotations omitted). Similarly, in *Bowman*, No. 16-cv-00490-M-LDA at p. 1, this Court determined that the borrowers failed to state a claim and held that "Rhode Island law provides that a Lender's servicer…can legally provide a mortgagee with notices of…foreclosure under the mortgage contract."

In this matter, Plaintiffs allege the same facts and rely on the same arguments as the borrowers in *252 Wolfrock*, *Cornejo*, and *Bowman*. Similar to the borrowers in the aforementioned matters, Plaintiffs claim an invalid foreclosure on the Property "because the 'Lender' (Ginnie Mae) failed to give notice or publish the notice of sale" pursuant to the Mortgage." (Am. Compl. ¶ 38.) Instead, Plaintiffs allege that the notice of sale was mailed and published by the loan servicer, GMAC. (*Id*. at ¶ 2.) Plaintiffs' insistence that the alleged "'Lender' (Ginnie Mae)" is the only entity authorized to mail and publish the notice of sale lacks merit under Rhode Island law and wholly ignores prior decisions of this Court. On three separate occasions and as recently as November 16, 2016, this Court has affirmed the power of a mortgage servicer to initiate foreclosure on behalf of the lender and provide borrowers with the required pre-foreclosure notices. *See 252 Wolfrock*, 2016 WL 3766297, at *2; *Cornejo*, 2016 WL 4385895, at *2; *Bowman*, No.16-cv-00490-M-LDA at p. 1. As such, even assuming Plaintiffs' allegation that GMAC is merely the servicer of the Plaintiffs' Mortgage, there is no dispute that GMAC lawfully provided the Plaintiffs with the requisite pre-foreclosure notices. Accordingly, the foreclosure sale of the Property is valid and enforceable and Count II of Plaintiffs' Amended Complaint, alleging breach of contract, must be dismissed.

34732285v1 0990737
34732285v1 0990737

## V. CONCLUSION

For the reasons set forth herein, GMAC Mortgage LLC respectfully requests dismissal of this action pursuant to Rule 12(b)(6), with prejudice, and entry of an order quieting title to the Property in favor of GMAC Mortgage, LLC.

Respectfully submitted,

GMAC MORTGAGE, LLC,

By Their Attorneys,

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar No. 7075
Matthew R. Shechtman, Bar No. 8397
HINSHAW & CULBERTSON LLP
321 South Main Street
Suite 301
Providence, RI 02903
401-751-0842
401-751-0072  (facsimile)
sbodurtha@hinshawlaw.com
mshechtman@hinshawlaw.com

Dated: February 21, 2017

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on February 21, 2017.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha